IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| CAROL V. STIMSON, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-06-0614 |
| FOOD LION, LLC, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Carol V. Stimson ("Mrs. Stimson") sued Food Lion, LLC ("Food Lion") for negligence. The Court held a bench trial on February 1, 2007 and entered judgment in favor of Stimson for $279,297.02. The Fourth Circuit remanded the case for findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52.[1]

I.  FINDINGS OF FACT

On March 25, 2004, Melissa Burton was working as a cashier at the Food Lion grocery store at 1312 South Main Street in Mount Airy, Maryland. Trial Tr. 115:12-20. As a customer was at the register, a soda spilled from a bottle on the conveyor. *Id.* 115:25; 116:1-3. After the soda spill, Burton called fellow

---

[1] Rule 52 provides that "in all actions tried upon facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58." Fed. R. Civ. P. 52(a).

1

employee Henry Reemsnyder to clean the spill. *Id.* 118:2-16. He began mopping the floor and placed a bucket and cone at the entrance to Burton's register aisle. *Id.* 118:2-16.

Reemsnyder failed to place a sign at the store entrance and did not block off the aisle while he was mopping because he had not decided where to place the cone. *Id.* 72:19-24; *Id.* 73:1-9.

Burton testified that store policy was that a caution sign be placed at the front and rear of a spill when it was anticipated that a customer would enter from either direction. *Id.* 137:11-14.

When Carol Stimson entered the Food Lion grocery store, she walked through a cash register lane and slipped and fell on her right hip. *Id.* 20:7-9. Before the accident, she did see any caution signs and was not warned that the aisle was wet. *Id.* 20:12-15; 27:1-14. Her view of the cone and mop bucket was blocked by the customers in the register lane. *Id.* 52:6-23; 58:7-9; 61:22-25.

Reemsnyder believes that his failure to place a sign at the store entrance "was what the problem [was] . . . . She didn't see--if she had seen the sign, she'd have probably known to slow down." *Id.* Reemsnyder also testified that he did not hear anyone warn Mrs. Stimson about the wet floor. *Id.* 73:10-13.

Rosalie Vollmer, an office assistant for Food Lion, testified that customers were not supposed to enter the store

through the register lanes but admitted that she has observed customers enter the store that way and acknowledged that there were no signs barring customer entry through those lanes. *Id.* 110:22-25.

As a result of the fall, Mrs. Stimson underwent surgery to repair her hip and received intense physical therapy until July 2004. *Id.* 29:1-4; 33, 35:1-7, 43:7-9. Before the accident, Mrs. Stimson was employed as a bookkeeper, for her estranged husband's[2] business, and owned a housecleaning company with her sister and her husband. *Id.* 13:3-11. Mrs. Stimson testified that in July 2004 she returned to housecleaning, but not her bookkeeping job because her husband hired a replacement. *Id.* 43:7-19.

Mr. Tim Stimson was Mrs. Stimson's primary caregiver during her recovery process, and, following surgery, she was heavily dependent on him to help her get in and out of bed, take a shower, go to the bathroom, or complete other physical tasks. *Id.* 90:21-25, 91:11-25. Although her health has improved since July 2004, the accident has left her with a permanent limp, which causes her significant pain when walking. *Id.* 93:11-16.

Sheila Fellenbaum, Mrs. Stimson's sister, observed a significant change in Mrs. Stimson's mood after the accident.

---

[2] Although Mr. and Mrs. Stimson maintain the same residence, they have not co-habited for more than one year. Trial Tr. 34:8-22.

3

*Id.* 97:17-21.  Mrs. Stimson appeared depressed after the accident and on several occasions indicated her belief that she has become a burden on her sister and brother-in-law because they had to complete the housecleaning without her assistance.  *Id.* 97:17-21. Fellenbaum testified that since the accident, Mrs. Stimson can no longer get on her hands and knees to scrub the floor and has difficulty maneuvering up and down steps.  *Id.* 98:11-15; 99:1-6.

II. LEGAL DISCUSSION

    A.   LIABILITY

Under Maryland law,[3] a store owner owes an invitee the duty to exercise ordinary care to keep premises in a reasonably safe condition, and is liable for injuries caused by a breach of that duty.  *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232 (1965).  Stimson was Food Lion's invitee.  The duty of a store owner includes "the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (1997).  However, a store operator is not the insurer of the invitee's safety, and therefore, it will not be liable merely because an injury was sustained in the store.  *Moulden*, 239 Md. at 232.  Thus, the invitee has a duty to exercise due care for his or her own

---

[3] Because the tort occurred in Maryland, the substantive tort law of Maryland applies.  *Ward v. Nationwide Mut. Auto. Ins. Co.*, 328 Md. 240, 244 n.2 (1992).

4

safety, which includes the duty to look and see what is around the invitee. *Tennant*, 115 Md. App. at 389.

Food Lion breached its duty of care by failing to warn Stimson of the conditions of the floor.  The placement of the caution sign at the far end of the register aisle was not open and obvious.  When the accident occurred, customers in the register aisle blocked Mrs. Stimson's view of the mop and sign. As Food Lion was aware that customers enter the store through the register lanes–and have taken no steps to bar that entry–a sign should have been placed at the front of the register lane in accordance with Food Lion's policy of placing warning signs at both ends of a spill.   The failure to follow that policy caused Mrs. Stimson's injuries.

B.   Damages

Mrs. Stimson sought $3,150 in lost wages, $26,147.02 for past medical bills and $250,000 in non-economic damages ($150,000 for pain and suffering and $100,000 for future impairment).  For the following reasons, the Court awarded Mrs. Stimson $279,297.02 in damages.

When negligence occurs, any resulting physical injury is compensable if it is capable of an objective determination.  *Hunt v. Mercy Medical Center*, 121 Md. App. 516, 524 (1998).  The measure of damages is the amount that will compensate plaintiff for all losses sustained as a result of the accident, including

lost wages and pain and suffering.  *Lumber Terminals, Inc. v. Nowakowski*, 36 Md. App. 82, 92 (1977).  Lost wages and earnings suffered from the time of the injury to the trial, as well as those reasonably certain to occur in the future, can be considered in computing damages.  *Lumber Terminals*, 36 Md. App. at 90 (1977).  However, future damages must be established with reasonable certainty, and must not rest upon speculation.  *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 666 (1983).

Mrs. Stimson is entitled to damages for pain and suffering.  The testimony revealed that she has suffered extreme pain as a result of her injuries, including having to adjust to the metal hardware in her hip, the embarrassment and inconvenience of being dependent on her estranged husband and sister for four months, and participating in intense physical therapy for four months.  As her impairment is permanent, Mrs. Stimson is also entitled to damages for future impairment.  Although Mrs. Stimson has returned to work, she is significantly limited in her physical capabilities and can no longer engage in certain activities that were possible before the accident.  The injuries Mrs. Stimson sustained are permanent and will cause her physical problems for the rest of her life.

Mrs. Stimson is also entitled to $29,297.02 for lost wages and past medical bills.  Her lost wages claim is based solely on her bookkeeping job, as she acknowledged that after the accident

6

she continued to be paid for her housecleaning job.  Mrs. Stimson is also entitled to expenses for past medical bills as they were reasonably and necessarily incurred as the result of the injuries she sustained during the fall.

<u>December 11, 2007</u>            _____/s/_____
Date                            William D. Quarles, Jr.
                                United States District Judge